IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| DIANA CORZINE, | CV-20-24-H-CCL |
|---|---|
| Plaintiff, | |
| vs. | Opinion and Order |
| UNITED STATES DEPARTMENT OF VETERAN AFFAIRS and ROBERT L. WILKIE, SECRETARY OF VETERANS AFFAIRS, | |
| Defendants. | |

Defendants U.S. Department of Veterans Affairs and its Secretary

(collectively the VA)[1] move to dismiss Plaintiff Diane Corzine's retaliation claim

under Title VII (Count II of her amended complaint) for failure to exhaust her

administrative remedies and her Equal Pay Act claim (Count III) because the

Court of Federal Claims has exclusive jurisdiction over that claim.  Dr. Corzine

concedes that the Court of Federal Claims has exclusive jurisdiction over her

Equal Pay Act claim, but opposes the motion and moves to transfer that claim

(Count III) to the Court of Federal Claims.  The motions having been fully briefed

and no party having requested oral argument, the Court is prepared to rule.

---

[1] The Court generally avoids acronyms, but uses VA because it is commonly recognized as a reference to the Department of Veteran Affairs.

## PROCEDURAL BACKGROUND

Dr. Corzine filed her initial complaint on March 31, 2020. Her initial complaint included an Equal Pay Act claim (Count I), a claim for retaliation based on her Equal Pay Act claim (Count II), a Title VII discrimination claim (Count III) and a Title VII retaliation claim (Count IV). The VA filed a motion to dismiss Counts II and IV of the initial complaint on June 1, 2020. Rather than filing an opposing brief, Dr. Corzine moved to amend her initial complaint. The Court granted her motion and denied the motion to dismiss as moot.

Dr. Corzine filed her amended complaint on June 10, 2020. The amended complaint includes the same claims as her initial complaint and adds additional allegations to support what she calls a separate claim. (*See* Doc. 12 at ¶¶ 22 - 40).

## FACTUAL BACKGROUND[2]

Dr. Corzine began working at the Fort Harrison VA Clinic (Fort Harrison) in November of 2002. Dr. Corzine is double board certified in Family Medicine and Sleep Medicine and became the Chief of Sleep Medicine in August of 2016.

---

[2] The VA has raised a factual challenge to whether Dr. Corzine exhausted her administrative remedies as to her Title VII retaliation claim and both parties have provided documents from the administrative record. This summary is drawn from those documents as well as from the amended complaint. Nothing in this order should be construed as resolving fact issues that might be disputed when the case proceeds beyond the pleading stage.

In 2016, the VA's Physician Compensation Panel (the Panel)[3] conducted a biennial review and recommended increasing Dr. Corzine's total compensation package to $299,000, with a base salary of $284,000 and $15,000 extra for her administrative duties. The Panel made the same recommendation on March 22, 2018. Fort Harrison refused to follow the Panel's recommendation concerning Dr. Corzine in both 2016 and 2018. By March of 2018, Dr. Corzine had ten years of sleep medicine experience and sixteen years of VA experience. Her salary was $233,000 plus $15,000 extra for her administrative duties, for a total of $248,000.

At some point, Dr. Corzine learned that the Panel had also recommended a pay increase for Dr. Thigpen, a male sleep medicine physician working at Fort Harrison and his pay was increased by $19,000. Like Dr. Corzine, Dr. Thigpen practiced 100% sleep medicine. He had five years VA experience and was supervised by Dr. Corzine.

In April of 2018, Fort Harrison selected a male applicant (Dr. Alkazir) for a sleep medicine position with the same clinical responsibilities as Dr. Corzine but no administrative or supervisory responsibilities. Fort Harrison offered Dr. Alkazir a compensation package of $284,000 plus $42,000 recruitment incentive,

---

[3] The amended complaint (Doc. 12) refers to "the Physician Compensation Panel" in some paragraphs (*see e.g.* ¶¶ 9 and 13) and refers to "the Biennial Compensation Panel" in others (*see e.g.* ¶ 16); the Court presumes that these references are to the same panel.

Page 3 of 18

as recommended by the Physician Compensation Panel.  In May of 2018, Dr.

Alkazir accepted the position.

At some point after the 2018 biennial pay review, Dr. Corzine began

objecting to Fort Harrison's failure to increase her salary as recommended by the

panel.  She complained internally about the ongoing pay disparities between

herself and Dr. Thigpen and Dr. Alkazir.  Fort Harrison tried to withdraw the offer

made to Dr. Alkazir in an effort to avoid raising Dr. Corzine's salary in response

to her protests.  Dr. Alkazir accepted a position at a private facility outside the

State of Montana and the open position was not filled.[4]

Dr. Corzine "registered her complaints internally about the ongoing pay

disparities between herself and male physicians.  She believed [Fort Harrison's]

failure to pay her in accordance with the Biennial Compensation Panel's

recommendations from 2016 and 2018 or to pay her consistent with the offer made

to Dr. Alkazir was not only discriminatory but in retaliation for complaints made

about pay disparity and also in retaliation for her prior EEO complaint regarding

pay discrimination." (Doc. 12 at ¶ 16).

---

[4] The amended complaint's allegation that Fort Harrison had no sleep physician after Dr. Alkazir found another position is contradicted by the allegations that both Dr. Thigpen and Dr. Corzine practice 100% sleep medicine at Fort Harrison.  The Court has done its best to resolve this inconsistency while still accepting as true the factual allegations of the amended complaint.

Page 4 of  18

On July 5, 2018, the day Fort Harrison confirmed that Dr. Corzine would not receive the panel's recommended pay adjustment, Dr. Corzine contacted the EEO office to lodge an informal complaint.    (Doc. 12 at ¶ 18; Doc. 15-2 at 2). Dr. Corzine submitted her formal complaint to the VA's Office of Resolution Management on October 10, 2018.  (*See* Doc. 15-2).  On March 21, 2019, Dr. Corzine signed her sworn response to a questionnaire issued by the VA's Office of Resolution Management.  (Doc. 15-3).  Question number 6 asked: "To your knowledge, has this happened to anyone else (coworker) under the same or similar circumstances?  If yes, please identify him/her by name, job title and sex?"  Dr. Corzine responded: "Yes to me in 2014 management made the decision to pay male physicians with less experience and less responsibility more money than me as a female physician.  I am concerned this incident is retaliation."  Dr. Corzine submitted a second sworn statement on August 28, 2019.  (Doc. 20-2).

The VA notified Dr. Corzine in a letter dated August 29, 2019, that her original case and supplemental information had been referred to the Office of Employment Discrimination and Complaint Adjudication (Employment Discrimination Office).  (Doc. 12 at ¶ 19).  Although there was no hearing or discovery exchanged, Dr. Corzine received a Final Agency Decision on January 31, 2020.  (Doc. 12 at ¶¶ 19 - 20).

At some point in the fall of 2019, while Dr. Corzine was waiting for the
Final Agency Decision regarding the administrative complaint she filed in July of
2018, Fort Harrison posted a job for a sleep physician – i.e. someone who would
practice only sleep medicine. Fort Harrison offered the position to a male
physician (Dr. Bergman) at an annual wage of $275,000 with a recruitment bonus.
The human resources employee at Fort Harrison who prepared the pay
recommendation stated that Dr. Bergman would spend 51% of his time doing ENT
work, even though the job posting indicated the advertised position was for sleep
medicine. Fort Harrison's Chief of Staff (Dr. Maganito) participated in the
decision to hire Dr. Bergman and to pay him $275,000, even though he would be
working solely in the field of sleep medicine.

On October 12, 2019, Dr. Bergman accepted the offer after confirming that
he would not be expected to provide ENT services. Dr. Bergman's medical
privileges, like Dr. Corzine's, are limited to sleep medicine and he has worked
100% in sleep medicine since his hiring date. After learning about this lawsuit,
Dr. Maganito attempted to force Dr. Bergman to obtain ENT privileges.

As of October 2019, Dr. Corzine was paid an annual salary of $235,000 for
her work in sleep medicine. She also receives an additional $15,000 for her chief
duties. Dr. Corzine's biennial review process began in April of 2020 and resulted

Page 6 of 18

in a recommendation that Dr. Corzine's pay be increased to $280,340. Dr. White,

Dr. Corzine's supervising physician, signed the "Market Pay Review and

Approval Form" on May 5, 2020.

On or near May 5, 2020, Dr. Maganito told Dr. Corzine that he supported

the pay increase to $280,000, inclusive of her $15,000 for additional duties as

Chief of Sleep Medicine. Dr. Corzine pointed out that she would still be earning

$10,000 less than Dr. Bergman for the same work, as his $275,000 salary did not

include an extra $15,000 because he was not the Chief of Sleep Medicine.

On May 20, 2020, Dr. Maganito sent Dr. Corzine an internal message

indicating he knew she had filed a case and thought it was "unfortunate" and not

in keeping with what he expected based on their interactions. As of June 10,

2020, the date she filed the amended complaint, Dr. Corzine had received no

confirmation that her pay will increase to $280,000.

## DISCUSSION

### Title VII Retaliation Claim

The VA moves to dismiss Dr. Corzine's Title VII retaliation claim for lack

of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that she failed

to exhaust her administrative remedies as to that claim. The VA does not explain

why the Court should use the Rule 12(b)(1) rather than the Rule 12(b)(6) standard

in this case, given the Supreme Court's recent holding that Title VII's charge-filing requirement is a mandatory claim processing rule rather than a jurisdictional bar. *Fort Bend County, Texas v. Davis,* 139 S.Ct. 1843, 1852 (2019).[5]

This issue is important for purposes of the pending motion for two reasons. While the party invoking federal jurisdiction always has the burden to establish jurisdiction, *Kingman Reef Atoll Invs. v. United States,* 541 F.3d 1189, 1197 (9th Cir. 2008), failure to exhaust by complying with a mandatory claim processing rule is an affirmative defense, shifting the burden to the defendant.

The VA relies on documents submitted by Dr. Corzine during the administrative process to support its claim that her Title VII retaliation claim should be dismissed, which would be permissible were the Court deciding the motion based on lack of subject matter jurisdiction. This Court may consider uncontested documents incorporated in the complaint and documents subject to judicial notice when considering a Rule 12(b)(6) motion to dismiss without converting the motion to a motion for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).

---

[5] The Court recognizes that the VA may have an argument that this case can be distinguished from *Davis* case because the United States' waiver of sovereign immunity in Title VII cases is limited to cases in which the plaintiffs have exhausted their administrative remedies. It will nevertheless decide the issue based on Rule 12(b)(6), rather than Rule 12(b)(1).

Page 8 of 18

Dr. Corzine arguably incorporated the documents produced in the administrative record in her complaint by alleging that she had exhausted her administrative remedies and by submitting additional documents from the administrative record. The parties appear to agree that the documents submitted are authentic and were part of the administrative record. The Court therefore considers those documents in ruling on the VA's motion to dismiss Dr. Corzine's Title VII retaliation claim.

The purpose of the exhaustion requirement is to ensure that the agency charged with considering the EEO complaint has "an opportunity to investigate the charge." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). The VA argues that the Court should only consider the statements made by Dr. Corzine in her formal complaint (Doc. 15-2) and not statements made in her March 21, 2019, written and sworn response to an EEO questionnaire (Doc. 15-3), which it refers to as a "pre-complaint questionnaire" (Doc. 15 at 7) or statements made in her August 28, 2019, sworn statement.

Whether Dr. Corzine submitted her sworn statements before or after she submitted her formal complaint is irrelevant, so long as the entity charged with investigating her complaint received the sworn statements before making a final decision. Dr. Corzine alleges that she was informed in a letter dated August 29,

2019 that her "original case and the additional supplemental information" had been referred to the Employment Discrimination Office. (Doc. 12 at ¶ 19). That allegation is sufficient at this stage in the proceeding to allow the Court to infer that the Employment Discrimination Office was provided with her sworn statements in addition to her formal complaint.

The fact that the Employment Discrimination Office failed to address Dr. Corzine's Title VII retaliation claim "has no bearing on whether [Dr. Corzine] has exhausted her administrative remedies with regard to that claim." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). The issue is whether Dr. Corzine's Title VII retaliation claim is reasonably related to claims she made in her formal complaint and sworn statements. *Vasquez*, 349 F.3d at 644. In deciding that issue the Court "may consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, and any locations at which discrimination is alleged to have occurred.'" *Id.* (*quoting B.K.B.*, 276 F.3d at 1100).

It appears to the Court that Dr. Corzine may be attempting to state multiple claims for Title VII retaliation in ¶ 45 of her amended complaint. The Court agrees with the VA that Dr. Corzine cannot assert a retaliation claim based on alleged retaliatory conduct that occurred while the Employment Discrimination

Page 10 of 18

Office was considering her EEO claim and in response to that claim. She should have submitted a separate EEO claim to as to such conduct. *See Vasquez*, 349 F.3d at 645.

The Court cannot grant the VA's motion to dismiss Dr. Corzine's Title VII retaliation claim in its entirety because she arguably exhausted her administrative remedies as to her claim that Fort Harrison retaliated against her for the EEO complaint she filed before the 2016 Biennial Compensation Panel review by refusing to raise her salary following both the 2016 and 2018 reviews, even though the Panel recommended that she be given a raise. Dr. Corzine referred to her concern that management's 2016 and 2018 decisions not to raise her salary may have been retaliation for what happened after management's 2014 decision "to pay male physicians with less experience and less responsibility more money" than Dr. Corzine. (*See* Doc. 15-3 at 5, response to question 16). Although Dr. Corzine does not specifically refer to her pre-2016 EEO complaint in her 2018 EEO complaint, an investigation should have revealed the existence of such a complaint.

### Equal Pay Act Claim

Dr. Corzine having conceded that the United States Court of Federal Claims (the Court of Federal Claims) has exclusive jurisdiction over her Equal Pay Act

claim, the only issue to be resolved is whether Dr. Corzine's Equal Pay Act claim should be dismissed or transferred to the Court of Federal Claims. Dr. Corzine argues that the claim should be transferred under 28 U.S.C. § 1631 because a transfer is in the interests of justice. The VA opposes Dr. Corzine's motion to transfer and asks the Court to grant its motion to dismiss because Dr. Corzine's Equal Pay Act claim is barred by 28 U.S.C. § 1500.

Section 1500 deprives the Court of Federal Claims of jurisdiction "of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." The VA has not moved to dismiss Dr. Corzine's Title VII claim or her Equal Pay Act retaliation claim and the Court is denying the VA's motion to dismiss her Title VII retaliation claim, which means that if the Court were to transfer her Equal Pay Act claim, she would have claims against the VA pending in this case and a claim pending against the United States in the Court of Federal Claims.

This Court cannot simply transfer Dr. Corzine's Equal Pay Act claim and allow the Court of Federal Claims to decide whether it has jurisdiction to consider

Page 12 of 18

whether it should dismiss Dr. Corzine's Equal Pay Act claim based on the jurisdictional bar raised by 28 U.S.C. § 1500. The Ninth Circuit held in *Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 655 (9th Cir. 1989) that a federal district court cannot rely on 28 U.S.C. § 691 to transfer a claim to the Court of Federal Claims unless the Court of Federal Claims has jurisdiction.

Dr. Corzine's reliance on *McGuire v. United States* to argue that this is merely a procedural issue is misplaced. In that case, the Ninth Circuit found that the Tucker Act does not "preclude district court jurisdiction over [a plaintiff's] takings claim, so long as there is an independent waiver of sovereign immunity and grant of federal court jurisdiction." 550 F.3d 903, 911 (9th Cir. 2008). McGuire relied on the bankruptcy code to establish federal court jurisdiction for his takings claim and the Ninth Circuit found that the United States had waived sovereign immunity to the extent that McGuire could proceed with the takings claim, but had asserted its right to have that claim decided by the Court of Federal Claims rather than a federal district court. *Id.* The issue in this case is not which court has jurisdiction, which is a procedural issue; the issue is whether the Court of Federal Claims's jurisdiction is barred by 28 U.S.C. § 1500.

Congress enacted § 1500 to prevent plaintiffs from seeking monetary relief from the United States in the Court of Federal Claims while seeking tort relief

Page 13 of 18

from government officials in other courts. *United States v. Tohono O'Odham Nation*, 536 U.S. 307, 311 (2011). In *Tohono*, the Supreme Court considered "what it means for two suits to be 'for or in respect to' the same claim" for purposes of 28 U.S.C. § 1550, 563 U.S. 307, 311 (2011). The Supreme Court held that "the substantial overlap in operative facts between" two cases filed by the Tohono O'Odham Nation (the Nation), one in federal district court and one in the Court of Federal Claims, precluded jurisdiction in the Court of Federal Claims. *Id.* at 318. The Nation filed the suit against the United States in the Court of Federal Claims the day after it filed suit against various federal officials in the United States District Court for the District of Columbia, alleging that those officials violated their fiduciary duty to the Nation with respect to tribal assets held in trust by the United States. *Id.* at 310. The complaint filed in District Court requested injunctive relief and an accounting. *Id.* The complaint filed in the Court of Federal Claims "described the same trust assets and the same fiduciary duties" as the complaint filed in District Court and requested money damages based on "almost identical violations of fiduciary duty" alleged in the District Court complaint. *Id.* After comparing the allegations of the two complaints, the Court of Federal Claims granted the government's motion to dismiss. *See The Tohono O'Odham Nation v. United States,* 79 Fed. Cl. 645 (2007).

The courts regularly faced with deciding issues whether § 1500 applies "use a two-step inquiry. . . First, there must be 'an earlier-filed suit or process pending in another court. Second, 'the claims asserted in the earlier-filed case [must be] for or in respect to the same claim(s) asserted in the later filed Court of Federal Claims action." *Philbert v. United States*, 779 F. App'x 733, 736 (Fed. Cir.)(per curiam)(internal citations omitted). Were this Court to grant Dr. Corzine's request to transfer her Equal Pay Act claim without dismissing her other claims, those claims would remain pending in this Court, and the Court of Federal Claims would compare the operative facts alleged in the amended complaint in support of each of those claims and dismiss her Equal Pay Act claim if any of the operative facts supporting any of those claims overlapped with the operative facts of her Equal Pay Act claim.

The *Philbert* case is particularly helpful because it is similar to the instant case. Mr. Philbert, who was employed by the VA in a medical center in California filed a *pro se* complaint in the United States District Court for the Central District of California. After the district court dismissed some of his claims, Mr. Philbert filed a second amended complaint asserting "five claims: (1) disparate treatment based on national origin in violation of Title VII; (2) creation of a hostile work environment in violation of Title VII; (3) retaliation for filing an EEOC complaint

Page 15 of  18

in violation of Title VII; (4) disparate treatment based on sex in violation of Title VII; and (5) wage discrimination in violation of the Equal Pay Act." *Id*. at 735. Once Mr. Philbert established that his Equal Pay Act claim exceeded $10,000, the district court granted Mr. Philbert's motion and transferred his Equal Pay Act claim to the Court of Federal Claims. The Court of Federal Claims then granted the government's motion to dismiss pursuant to 28 U.S.C. § 1500, and Mr. Philbert appealed. *Id*.

The Federal Circuit found that the first step of its two-step analysis was satisfied because Mr. Philbert's Equal Pay Act claim was filed at the time it was transferred and his related claims remained pending in district court. *Id*. at 736. The Federal Circuit found that the second step was satisfied because Mr. Philbert's Equal Pay Act claim relied "on substantially the same operative facts as his Title VII claim filed in the Central District of California." *Id*. Although the Federal Circuit acknowledged that one of Mr. Philbert's pending claims in the district court differed from his Equal Pay Act claim because it "alleged retaliatory action for filing an EEOC complaint," the Federal Circuit affirmed the Court of Federal Claims because "another of his Title VII claims relies on alleged disparate treatment on the basis of sex," which was the basis for Mr. Philbert's Equal Pay Act Claim.

Dr. Corzine chose to file an amended complaint rather than responding to the VA's first motion to dismiss. She chose to include her Equal Pay Act claim in her amended complaint, even though she had been put on notice that this Court's jurisdiction over Equal Pay Act claims does not extend to claims over $10,000. The Court agrees with Dr. Corzine that the operative facts added to her amended complaint to support her "separate claim" for retaliation based on her filing of an Equal Pay Act claim are different from her Equal Pay Act claim. Her amended complaint, however, contains both a Title VII claim and a Title VII retaliation claim supported by at least some of the same operative facts that support her Equal Pay Act claim.

## CONCLUSION & ORDER

The Court sympathizes with Dr. Corzine's predicament here, which prevents her from filing all of her related claims at the same time and in the same court. Dr. Corzine made the choice to accept employment with the federal government and the federal government is entitled to assert its sovereign immunity even when its immunity leaves an individual with no remedy or forces that individual to elect between remedies at the time of filing a complaint. Dr. Corzine may be able to amend her complaint again or resolve her claims before this Court and file her Equal Pay Act claim in the Court of Federal Claims at some point.

Page 17 of 18

IT IS HEREBY ORDERED that Defendants' "Partial Motion to Dismiss"

(Doc. 14) is DENIED as to Count II and GRANTED as to Count III.  Count III is

dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's motion to transfer (Doc. 18) is

DENIED.

Dated this 9th day of September, 2020.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE